THE PEOPLE *ex rel.* William T. Johnson, Collector,

*v.*

SAMUEL D. WARD, Receiver.

*Filed at Ottawa March 28, 1883.*

1. TAXATION—*assessment can not be raised without notice.* After a town assessor has once made an assessment of the personal property of a tax-payer, and entered the same upon his books, he can not lawfully increase such assessment without notice to the tax-payer. This is so whether such increase be attempted by raising the valuation of the property already listed, or by adding other property to the list and valuing that.

2. SAME—*capital stock of corporation must be assessed by State board.* The tangible personal property and real estate of a corporation are required to be assessed for taxation by the local assessor, but the capital stock, embracing its intangible property, must be valued for taxation by the State Board of Equalization, and this whether the corporation is solvent or insolvent, or in the hands of a receiver. An assessment of such capital stock by the local assessor of an insolvent corporation is wholly without authority of law, and void.

3. The statute requires that a sworn statement shall be made to the local assessor of the capital stock of the corporation, to be returned by such assessor to the county clerk, to be by him transmitted to the State Auditor, who is required to lay it before the State Board of Equalization. This statement is to be made by the officers of the company having the custody of its assets, but if the assets are in the hands of a receiver, he is required to make such list. This is applicable to the listing of tangible personal property as well as to capital stock. The listing of the tangible property is for the local assessor to value and assess, while the other is to enable the State board to value and assess the same.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

On May 1, 1877, the Republic Life Insurance Company was a corporation organized under the laws of Illinois, and doing business as such in this State. Its principal place of business was in the town of South Chicago. J. Alder Ellis was its president. Between that day and the 25th of May of that year the town assessor of the town of South Chicago entered on his books, under the head, "List of taxable personal property in the town of South Chicago, Cook county, and State of Illinois, for the year 1877," the following, under the following sub-captions:

| To whom listed. | No. | Street. | Household and office furniture. Val. in dolls. | Total personal property. Fair cash val. in dolls. |
|---|---|---|---|---|
| Rep. Life Ins. Co... | Rep. | Life Build'g. | $1000 | $1000 |

In the printed form in the assessor's book, on which this entry was made, was a sub-heading, as follows: "Credits, other than of banks, etc.—value in dolls." Under this sub-head nothing was entered on the page or sheet upon which the assessment of $1000 was entered,—in fact no other entry was made in this connection.

Before May 25, 1877, a statement of the amount of the capital stock of this company was prepared by an employé

of the same, under the direction of its officers.    This statement was in due form, according to the printed circulars, instructions and forms prescribed by the Auditor.    This statement was not, however, signed by any officer of the company, nor was it given to the assessor by any officer of the company.

On May 25, 1877, in this state of affairs, proceedings were instituted by the Auditor, in the circuit court of Cook county, to dissolve the corporation and distribute its assets, under the statute, and on that day Ward was appointed by that court a receiver, and as such took control of its property. Soon after this the receiver, finding that no return had been made to the local assessor of the amount of the capital stock of the corporation on May 1, 1877, signed and verified the statement which had been prepared, as above mentioned, and delivered the same to the local assessor.    This statement coming into the hands of a deputy in the office of the local assessor, instead of returning the same to the county clerk, to be by him forwarded to the Auditor, for the use of the State Board of Equalization, he entered upon another sheet of the assessor's book, under the head of "List of taxable personal property in the town of South Chicago,  *  *  *  for the year 1877," and under the sub-head "To whom listed," the words "Rep. Life Ins. Co.," and in the same line, on the same sheet, under the sub-head "Credits, other than of banks, etc.—value in dolls.," the figures "$81,000," and in the same line, under the sub-head "Total personal property—fair cash value in dollars," the figures "81,000."    Accordingly the warrant to the collector contained, on one page, a mandate to collect some $79, as a tax upon the $1000 assessment, and on another page, to collect some $6000, as a tax upon the $81,000 assessment.

Afterwards, the county collector of Cook county intervened in the suit of the Auditor, mentioned above, by a petition to the court, asking that the receiver, Ward, should be directed by the court to pay both of these claims for taxes.    Such

proceedings were afterwards had that the court ordered the receiver to pay the amount due and unpaid upon the $1000 assessment, but refused to order payment upon the $81,000 assessment, and enjoined the collector from proceeding to collect the latter tax. From this decision the collector comes into this court, seeking a reversal of this decree.

Mr. Consider H. Willett, for the appellant:

Section 6, clause 7, chapter 120, Revised Statutes, provides that the personal property of corporations whose assets are in the hands of a receiver shall be listed by him in the name of such receiver. The corporation having a receiver appointed May 21, 1877, the property the State Board of Equalization would have assessed if no receiver had been appointed, became, by such act, subject to assessment by the township or local assessor. See chap. 120, sec. 22, Rev. Stat.

Chattels having a tangible existence are to be taxed in the locality in which they are situated. Burroughs on Taxation, 59; *Railroad Co.* v. *Morgan,* 14 Ill. 163; *Wilkey* v. *Pekin,* 19 id. 160; *King* v. *McDrew,* 31 id. 418; *Dunleith* v. *Reynolds,* 53 id. 45; *First Nat. Bank* v. *Smith,* 65 id. 54; *Munson* v. *Crawford,* id. 185; *Danville Banking and Trust Co.* v. *Parks,* 88 id. 170; *Irwin* v. *Railroad Co.* 94 id. 105.

Assessors act judicially in making their assessments, and courts can not review and revise their action. Const. sec. 1, art. 9; *Republic Life Ins. Co.* v. *Pollack,* 75 Ill. 294; *People* v. *Brislin,* 80 id. 423; *Porter* v. *Railroad Co.* 66 id. 594; *Ottawa Glass Co.* v. *McCaleb,* 81 id. 562; *Railroad Co.* v. *Siders,* 88 id. 327; *Spencer* v. *People,* 68 id. 512; *Union Trust Co.* v. *Weber,* 96 id. 346; Burroughs on Taxation, 238; *People* v. *Big Muddy Iron Co.* 89 Ill. 116; *Madison County* v. *Smith,* 95 id. 335.

Irregularities in taxation are no longer held to defeat the tax. *Thatcher* v. *People,* 79 Ill. 597; *Union Trust Co.* v. *Weber,* 96 id. 351.

Messrs. HUTCHINSON & LUFF, for the appellee:

The law requires the assessor to assess and value all property as of the 1st day of May. (Rev. Stat. chap. 120, sec. 24.) The assessor having made one assessment against the property, in the name of its owner, on the 1st day of May, could not, after the property changed hands, make a second assessment against the transferee, by which the tax was increased. *Darling* v. *Gunn,* 50 Ill. 424; *Cleghorn* v. *Postlewaite,* 43 id. 428.

The statute requires the assessor to make demand on the owner. (Rev. Stat. chap. 120, sec. 78.) This he did not do, and a second assessment after the 1st day of May, without demand or notice against property transferred to the receiver subsequent to May 1, is illegal.

The return upon which the assessment was made was made under section 32, chapter 120, Revised Statutes, and was for the purpose of furnishing the State Board of Equalization the information required by that section as to the value of the capital stock. This tax is, therefore, illegal, the assessment having been made upon an erroneous basis, either fraudulently or by mistake, and in cases of fraud or mistake a court of equity will enjoin the collection of an unjust tax. *Du Page* v. *Jenks,* 65 Ill. 287; *Drake* v. *Phillips,* 40 id. 388; *Vieley* v. *Thompson,* 44 id. 9; *Supervisors* v. *Campbell,* 42 id. 490; *Cleghorn* v. *Postlewaite,* 43 id. 428; *Darling* v. *Gunn,* 50 id. 424.

The assessor must ascertain, or make an effort to ascertain, the value of the property assessed. The deputy assessor acted upon a return made for the State Board of Equalization, which return included real property in other States, and made a pretended assessment without exercising his judgment in the matter at all. His act in this matter was therefore nugatory. Const. sec. 1, art. 9; *McAuley* v. *Carter,* 22 Ill. 58; *Spencer* v. *People,* 68 id. 512.

The receiver having no notice of such increased assess-
ment, could not appeal to the board of review or county
board.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

After a town assessor has once made an assessment of the
personal property of a tax-payer, and entered the same upon
his assessor's books, he can not lawfully increase such assess-
ment without notice to the tax-payer. (*Cleghorn* v. *Postle-
waite*, 43 Ill. 428.) This is the law, whether such increase
be attempted by raising the valuation of the property already
listed, or by adding other property to the list and valuing
that. The tax-payer here had no notice of this additional
assessment, and it must be regarded as inoperative against
him unless there be something in this case to take it out of
this general rule. This proposition counsel for appellant
does not question; but he contends that "it was the duty of
the *town assessor* to assess the tangible property of this cor-
poration *after the appointment of a receiver*, which the board
of equalization would otherwise have assessed, and in exactly
the same manner that such assessor would assess other per-
sonal property within his jurisdiction,"—and by *this proposi-
tion* he concedes that his client "must stand or fall." Counsel
for appellant concedes that in this case "the assessor did
assess *all* the personal property in fact liable to assessment
at the time he made the assessment upon the office furni-
ture," but he contends that "afterwards, by operation of
law, *other* personal property not at such date within his
jurisdiction, came within such jurisdiction," and thus he
was authorized by law to make the subsequent assessment.
We can not sanction these views. By our statute the tan-
gible personal property held or owned by this corporation on
the 1st day of May, 1877, was required to be listed with the
local assessor, to be valued and assessed by him. (See Rev.

Stat. chap. 120, secs. 5, 6, 12, 24-29.) The real estate of the corporation situate in that town was also subject to assessment, as other real estate. The capital stock (embracing the intangible property) of such corporation was to be valued for taxation by the State Board of Equalization. (Sec. 3, clause 4.) To that end it was required that a sworn statement should be made to the local assessor of the amount of the capital stock of the company, to be returned by the local assessor to the county clerk, and to be by him transmitted to the Auditor, to be by him laid before the State board. (See chap. 120, secs. 32, 33.) And by section 6 the property of corporations whose assets are in the hands of receivers is required to be listed by such receivers.

Counsel for appellant seems to assume that by virtue of this section 6 the jurisdiction of the local assessor is, in such cases, enlarged, and that he is thereby clothed with power, in all cases where the assets of a corporation are in the hands of a receiver, so that he is not only to value and assess the tangible property, but also the capital stock of the corporation, in the same manner that the State board should do in other cases. We do not think this statute should be so construed. It does not appear that it was intended by the statute that there should be one mode of assessment for corporations in the hands of receivers, and another for corporations not in such custody. The design of the statute plainly is, that the persons in custody shall furnish the information necessary to a proper assessment. So if the officers have the custody of the assets, the officers must list the property, and if a receiver has the custody, he must list the property; and this is the law whether the listing relates to the tangible personal property or to the capital stock. The listing of the tangible personal property is for the local assessor to value and assess, and the listing of the capital stock with the local assessor is that it may be by him returned to the county clerk, to be by him forwarded to the Auditor, to be laid

before ·the State board, · that the State board may value and assess the same. It follows that the act of the local assessor in entering the $81,000 assessment was wholly without authority, and inoperative.

The judgment of the circuit court is therefore affirmed.

*Judgment affirmed.*

Mr. Justice Walker: I hold the property was liable to assessment. It was assessed by the assessor legally authorized to make assessments, and although the assessment should have been made by the equalization board, and not by the town assessor, that was but an irregularity. The property being liable to assessment to bear its just burthens of taxation, it is not equitable that it should escape all taxation. I therefore dissent from this opinion.